NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EMMA D'ANGELO,**
*Claimant-Appellant,*

**v.**

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7145

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-1548, Judge Lawrence B. Hagel.

---

Decided: May 13, 2013

---

EMMA D'ANGELO, of Santa Clarita, California, pro se.

K. ELIZABETH WITWER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of

counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and CLEVELAND KARREN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

————————————

Before DYK, O'MALLEY, and WALLACH, *Circuit Judges*.

PER CURIAM.

Emma D'Angelo, the wife of a deceased veteran, appeals from a May 25, 2012, decision of the Court of Appeals for Veterans Claims ("Veterans Court"). *See D'Angelo v. Shinseki*, No. 11-1548 (Vet. App. May 25, 2012). This decision affirmed a decision of the Board of Veterans' Appeals ("the Board") denying Ms. D'Angelo's claim for dependency and indemnity compensation ("DIC"). We *dismiss* the appeal for lack of jurisdiction.

BACKGROUND

Ms. D'Angelo is the widow of veteran David J. D'Angelo, who served on active duty in the U.S. Marine Corps from March 16, 1966, to December 19, 1968. His time in the military included service in Vietnam, and while in Vietnam, Mr. D'Angelo was presumptively exposed to herbicides, including Agent Orange. *See* 38 U.S.C. § 1116(f). Despite this presumed exposure, none of Mr. D'Angelo's in-service medical records contain complaints of or treatment for any respiratory conditions, and his lungs and chest were evaluated as normal upon his separation from service in an examination conducted on December 18, 1968.

Nonetheless, several years after Mr. D'Angelo left service, in May 1973, a private physician diagnosed Mr. D'Angelo with sarcoidosis, a respiratory condition. This doctor opined that the condition had its onset in 1972. Mr. D'Angelo applied for VA benefits for that condition several years later, in 1990, but the Veterans Affairs ("VA")

regional office denied the claim in December 1990. Mr. D'Angelo subsequently died in February 1991, and his listed cause of death was "massive hemoptysis" resulting from respiratory conditions including bronchiectasis and sarcoidosis. *D'Angelo*, No. 11-1548, slip op. at 2 (Vet. App. May 25, 2012).[1]

Ms. D'Angelo then sought DIC benefits as a result of her husband's death. She filed a claim for DIC benefits in 1992, but the claim was denied by the VA regional office in March 1994 and by the Board in January 1997. No further appeal was taken, and the decision of the Board became final.

In 2009, the Board reopened Ms. D'Angelo's claim based on new and material evidence—an opinion she submitted from another private physician that noted the presence of "nonspecific" respiratory symptoms as early as March 1970. *Id.* (quotation marks omitted). This opinion explained, however, that despite the "potential temporal relationship" between Mr. D'Angelo's presumed herbicide exposure and his respiratory symptoms, he was not able to "make any definitive decisions about whether or not the [presumed] Agent Orange exposure caused [Mr. D'Angelo's] sarcoidosis." *Id.* (quotation marks omitted).

After reopening the claim, the Board considered additional evidence. First, it considered an opinion from a VA physician, dated June 2009, which concluded that it was "less likely than not . . . that Mr. D'Angelo's sarcoidosis was present during his active military service or during the one-year period following his discharge from service because [(1)] there were no records of in-service treatment for a respiratory condition and [(2)] a Septem-

---

[1] "Hemoptysis" refers to the "expectoration of blood-stained sputum." *See id.*, slip op. at 2 n.2 (quotation marks omitted).

ber 1972 chest x-ray revealed no [sarcoidosis]." *Id.*, slip op. at 2-3 (quotation marks omitted). The Board then sought clarification of this opinion, and the same physician opined in August 2010 that "Mr. D'Angelo's sarcoidosis was not causally related to [his] military service, including . . . putative exposure to Agent Orange or other herbicidal concoctions used in [southeast] Asia[,] because Agent Orange exposure is not known or suspected of causing sarcoidosis or bronchiectasis." *Id.*, slip op. at 3 (quotation marks omitted). Second, the Board considered another document submitted by Ms. D'Angelo—a letter from her husband's treating physician, which noted that Mr. D'Angelo had developed respiratory symptoms by November 1970, which was within two years of his Vietnam tour. The letter opined that even though "a connection between sarcoidosis and Agent Orange [exposure] has never been absolutely validated, one cannot ignore the temporal relationship of pulmonary symptoms onsets [sic] within a few years after exposure." *Id.* (quotation marks omitted). In March 2011, the Board considered this and other information in denying Ms. D'Angelo's claim for DIC benefits.

Ms. D'Angelo appealed to the Veterans Court. The court held that, although Ms. D'Angelo attempted to raise a claim of clear and unmistakable error ("CUE") on appeal, Ms. D'Angelo had not properly raised a CUE claim because she did not "alleg[e] any specific error or identify[] which [previous] decision she wishe[d] to collaterally attack." *Id.* Regarding the merits of the Board's decision, the Veterans Court held that Ms. D'Angelo had not shown that the Board's denial of DIC benefits was clearly erroneous. The Court first affirmed the Board's finding that Ms. D'Angelo's husband was not entitled to presumptive service connection under 38 C.F.R. § 3.307(a)(3), which grants service connection where a chronic condition arises to a degree of 10 percent or more within one year of discharge from service. The Veterans Court did not find

error in the Board's finding, primarily relying on the VA physician's opinion, "that there was no evidence of record demonstrating that Mr. D'Angelo's sarcoidosis manifested to a compensable degree within one year of his December 19, 1968, separation from service." *Id.*, slip op. at 5. Though Ms. D'Angelo argued that the Board had failed to consider a December 1, 1969, medical record allegedly showing manifestation during the one-year period,[2] the Veterans Court concluded that this "medical record . . . does not contain any respiratory complaints; rather, it refers only to difficulty sleeping." *Id.*, slip op. at 4. The Court therefore concluded that Ms. D'Angelo had "failed to carry her burden of demonstrating that [this] medical record was relevant and potentially favorable to her claim, such that the Board was required to consider and discuss it." *Id.* Second, the Veterans Court also affirmed the Board's finding that there was no presumptive service connection under 38 C.F.R. § 3.307(a)(6) because sarcoidosis is not a specifically enumerated disease that entitles a veteran exposed to herbicides to a presumption of service connection. *See* 38 C.F.R. § 3.309(e).

Finally, on the issue of direct service connection, as opposed to presumptive service connection, the Veterans Court concluded that the Board did not err in crediting opinions from the VA physician over the contrary opinion from Mr. D'Angelo's treating physician because the opinions of Mr. D'Angelo's physician were "speculative" as opposed to the "unequivocal[]" opinions of the VA doctor. *D'Angelo*, No. 11-1548, slip op. at 6 (Vet. App. May 25, 2012). The court also concluded that the Board had provided an adequate statement of reasons and basis for its decision. Ms. D'Angelo appeals.

---

[2]    The opinion identifies the record as a December 1, 1968, medical record, but the government's briefs and evidence submitted by Ms. D'Angelo make clear that this referred to a December 1, 1969, medical record.

DISCUSSION

Our cases establish that "[o]ur jurisdiction to review decisions of the Veterans Court is limited by statute." *Hillyard v. Shinseki*, 695 F.3d 1257, 1258 (Fed. Cir. 2012) (citing *Guillory v. Shinseki*, 603 F.3d 981, 986 (Fed. Cir. 2010)). Though we have jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions," 38 U.S.C. § 7292(d)(1), we lack jurisdiction over any "challenge to a factual determination" or "challenge to a law or regulation as applied to the facts of a particular case" in the absence of a constitutional issue, 38 U.S.C. § 7292(d)(1)(A); *see Hillyard*, 695 F.3d at 1258. Here, Ms. D'Angelo raises no non-frivolous legal or constitutional questions involving the validity or interpretation of a statute. In essence, Ms. D'Angelo's appeal is an attempt to relitigate factual issues that the Board and Veterans Court resolved against her. Accordingly, Ms. D'Angelo's appeal must be dismissed.

**DISMISSED**

COSTS

No costs.